EDWARD E. TRUMPFELLER *vs.* ERVIN W. CRANDALL.

Aroostook.      Opinion June 15, 1931.

*George B. Barnes*, for plaintiff.
*Bernard Archibald*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.   On general motion and exceptions. An action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant in the operation of his automobile in which the plaintiff was riding as an invited guest. The jury returned a verdict for ten thousand dollars ($10,000.00).

The plaintiff and the defendant were both in the employ of the American Telephone and Telegraph Company at its radio station at Houlton, Maine.

On the evening of June 22, 1929, defendant invited the plaintiff to ride with him in his car. For a time they rode about town and then went to the house of one Phil Clark, who joined them, the three at first riding on the front seat together. After driving around town for a short time, plaintiff took his place on the rumble seat. After going to the plaintiff's room and to one other place, defendant drove his car to the home of one Miss Flemming and there was some talk about going over to Woodstock, New Brunswick, to

see if they could find a friend of Clark's. Miss Flemming got into the car on the rumble seat by the side of the plaintiff and the defendant started for Woodstock somewhere around eleven o'clock in the evening. Evidence shows that at a sharp turn on Broadway in Woodstock Clark asked the defendant in effect to be more careful about taking corners. At Woodstock they did not succeed in finding the person whom they were seeking and after remaining a short time they started to drive back to Houlton.

There was evidence that on the return trip from Woodstock, at a point which is not clearly established as to miles, but at something more than half the distance to Houlton, the defendant began to drive in such a manner and at such a speed that Clark told him to stop the car. The defendant did stop it on the top of Parks Hill, which was practically level for a little distance. There is evidence that while the car was stopped Clark and the defendant had some conversation about the defendant's manner of driving and that Clark told him if he did not drive properly he would rather get out and walk and that the defendant gave assurances, which were heard by the plaintiff, that he would drive properly and that he and Clark then got into the car and they went on their way to Houlton. Defendant denies that he said anything about driving more carefully, claiming that he was driving all right.

Plaintiff stated that he did not think it was necessary to say more to defendant because Clark had had his argument with him and he had promised to drive in a proper manner. Clark stated that after they got back into the car and came to the top of Parks Hill the defendant, instead of driving his car more slowly, "seemed to increase his speed" and that he thought when he started down over the hill he was going fifty miles an hour. The plaintiff also estimated the speed at the same rate but the defendant said he was not going over forty miles an hour and thinks it was between thirty-five and forty, but when questioned closely insisted that he could not say how fast he was going. The plaintiff testified that at that time he tried to "holler" to the defendant to slow down but that he did not believe the defendant could hear him.

When the car was about two-thirds down the hill it left the road, jumped a ditch and was overturned and the plaintiff was seriously injured.

The defendant and his wife, in an effort to explain the overturning of the car, testified that the plaintiff told them that Clark pulled the emergency brake and the defendant said that Clark admitted to him that he did so. Clark, who is plaintiff in a separate personal action of his own against the defendant, denied this, and the plaintiff denied saying that Clark pulled the brake. Thus was presented to the jury an issue of fact as to whether or not Clark had, by such an act, caused the accident. The jury, however, after seeing the witnesses on the stand and after listening to their testimony and after considering all the evidence as it was presented to it, returned its verdict for the plaintiff.

Without further recital of the evidence, after a careful reading and weighing of all contained in the record before us, we find ourselves unable to reach any conclusion other than that the jury was fully justified, under all the circumstances of the case, in finding negligence on the part of the defendant and that such negligence was the proximate cause of the accident which resulted in the plaintiff's injury. The overturning of the defendant's car, unexplained by any other satisfactory evidence, could be attributed to nothing else than the defendant's negligence.

The case before us involves the rights of an invited guest. The question is whether the defendant exercised toward the invited guest that degree of care and diligence which would seem reasonable and proper from the character of the thing undertaken, which was the transportation of the guest in the defendant's automobile, a machine of even more "tremendous power, high speed and quick action" than at the time the opinion was written in the case of *Avery* v. *Thompson*, 117 Me., 120 (1918), which was a case "of novel impression in this state." In that case the Court said, "In a sense she may be said to have assumed the risks ordinarily arising from these elements, provided the machine is controlled and managed by a reasonably prudent man who will not by his own want of due care increase their danger or subject the guest to a newly created danger. In other words we conceive the true rule to be that the gratuitous undertaker shall be mindful of the life and limb of his guest and shall not unreasonably expose her to additional peril. This would seem to be a sane, sound and workable rule, one consistent with established legal principles and just to both parties. It

leaves the determination of the issue to the jury as a question of fact."

We may well apply to the instant case the language of the Court in the case of *Avery* v. *Thompson*, supra: "Tried by this test we are constrained to say that the verdict of the jury fastening liability upon the defendant in the case at bar is not so manifestly wrong that it should be set aside. His conduct bordered upon if it did not actually reach recklessness. It did not evince that regard for the safety of its passengers which is required."

We think we can go further in the instant case and say that the jury could not reasonably, under all the circumstances disclosed by the record, have come to any other conclusion but that the defendant was guilty of negligence.

With full recognition of the principle in *Humphrey* v. *Hoppe*, 128 Me., 92-95, and many other similar cases which might be cited, that one riding as a passenger or guest may not place his safety entirely in the keeping of the driver of an automobile but that he must exercise due and reasonable care for his own protection if he finds himself in a position of danger, we can not say that the jury was so clearly wrong in its conclusion that there was no contributory negligence on the part of the plaintiff that for that reason the verdict should be set aside. Whether there was or was not due care on the part of either the defendant or the plaintiff was a question of fact to be decided by the jury upon all the circumstances of the case and to the jury the presiding Justice had given full instructions. We feel that the jury was justified in taking the view that, at the time the car stopped, assurance was given by the defendant that he would drive properly and that the plaintiff had the right to rely upon that assurance, and that he was not contributorily negligent in remaining in the car as it was started again for Houlton.

The defendant in argument before this court has expressly stated that he made no claim that the damages were excessive. As far, therefore, as the general motion is concerned, it must be overruled on all points.

The case is also before us on four exceptions which will be considered in order.

1. During the direct examination of the plaintiff he was asked if, during the time he was in the hospital and while he was lying in

bed at home, his knowledge that his wife was "carrying a baby" worried him, and he answered, "It did." This evidence was offered for the purpose of proving mental suffering. Exceptions were duly reserved to the refusal of the presiding Justice to have the testimony struck from the record.

Assuming that this testimony was improperly admitted as constituting an element of damages, in no other way could it have prejudiced or affected the defendant's case. As counsel for defendant has expressly stated that the damages were not regarded as excessive, the exception is, as far as this case is concerned, without merit and must be overruled.

2. During the cross examination of the plaintiff, in an apparent attempt to show that Clark may have had something to do with the accident, counsel for defendant, while interrogating as to whether plaintiff saw Clark pull the emergency brake, received an answer to one of his questions in which the plaintiff, referring to the defendant, said, "He said he wasn't responsible for the accident; the insurance company was."

Defendant's attorney then moved for a withdrawal of the case from the jury and the motion was denied. Exceptions were duly taken and allowed. The plaintiff's attorney having expressed his willingness to have the answer struck out, the defendant's attorney said, "No. I want the record to stand as it is."

The fact that the defendant carried liability insurance having been brought to the attention of the jury might have influenced it in its decision on two points, on the question of the liability of the defendant, and on the amount of damages.

By his express statement to this court that the amount found by the jury was not excessive, the defendant disposed of any contention that he was prejudiced as to that phase of the case.

And we can not say that the defendant was prejudiced on the question of liability.

After a careful study of the record, it is our conclusion that, regardless of the presence of the element of insurance, the evidence in the case fully warranted the jury in finding that the defendant was negligent, and we are unable to see that he was prejudiced by the fact that the jury knew he was insured or by the refusal of the presiding Justice to order a mistrial. The verdict found full justifi-

cation in the admissible evidence and for that reason we can not say that the jury was influenced in its judgment because of the fact of insurance which was in the case.

"The ordering of a mistrial is discretionary with the presiding Justice and no exceptions lie to his refusal unless that discretion is abused." *Ritchie* v. *Perry*, 129 Me., 440; *Gregory* v. *Perry*, 126 Me., 99.

We find no abuse of discretion in the record before us, but we take this opportunity to emphatically reaffirm what was said by this Court in *Ritchie* v. *Perry*, supra, "that when evidence of the nature complained of is improperly introduced, *the only safe course to be followed* is to order a mistrial when requested to do so by opposing counsel. This is true whether the offending testimony is offered deliberately or comes into the case by real or seeming inadvertence. In the one case, the conduct of counsel merits rebuke, and in the other, possibility of a prejudiced verdict is imminent."

In the instant case, however, for the reasons hereinbefore given, the second exception must be overruled.

3. The defendant, at the close of the charge to the jury, requested the presiding Justice to give the following instruction:

"If the jury find that the plaintiff knew the danger of riding with the defendant by reason of the defendant's negligent operation of the car from Woodstock to the point where the car stopped just prior to the accident, and that he failed to remove himself from that danger when the car was stopped, the plaintiff cannot recover."

The Court declined to give the requested instruction, saying, "I refuse to give you that instruction, and will say to you that it involves a question of fact whether or not the plaintiff was negligent under those circumstances, if those circumstances existed." Exceptions were again reserved as to the refusal to instruct and to the instruction as given.

We find no error either in the instruction given or in the refusal to give the instruction requested. It was a question of fact for the jury under all the circumstances of the case whether the conduct of the plaintiff in continuing on to Houlton was such as to constitute contributory negligence on his part which, as the presiding Justice had properly instructed the jury, would bar him from recovery.

The instruction requested would have taken from the jury the right to consider and weigh events and the conduct of any of the parties subsequent to and concurrent with the stopping of the car and was properly refused. If further instructions on any points, which, in the opinion of counsel, were not clearly covered, had been desired, requests to cover those points could have been made. None were made.

4. The following instruction was also requested: "If the jury find that the plaintiff failed to protest to the defendant as to the manner of the defendant's operation of the car, and that the plaintiff recognized the danger due to the defendant's manner of driving, he cannot recover."

The Court said, "I will refuse to give you that instruction, stating to you that the elements involved there are questions of fact, which you are to determine and the elements of facts, if they exist, are for your determination as to whether or not the plaintiff exercised due care or whether or not he did anything or failed to do anything which a reasonably prudent man would do — should do or should not do under like or similar circumstances."

Here also exceptions were duly noted and allowed, both as to the refusal to instruct and to the instructions as given.

It is not clear to the court whether this request was intended to relate to the situation existing as the automobile began the descent of Parks Hill, or to conditions on the entire trip, or to the situation just before the car was stopped, but in any case it was a request for the Court to instruct the jury that it must make its finding on that point as a matter of law instead of being free to base its decision on facts as it found them to exist under all the circumstances of the case. This instruction also was properly refused, and here also we see no merit in the exception to the instruction as given which properly left with the jury for determination questions of fact bearing on the plaintiff's due care. Exceptions (3) and (4) must accordingly be overruled.

There is no force or merit in the instant case in the defendant's contention that the defendant's negligence must be imputed to the plaintiff on the ground that they were engaged in a joint enterprise and that therefore the plaintiff can not recover.

We have found no case in this state in which the Court has at-

tempted to give any definition of what constitutes a joint enterprise, but decisions from other states, a few of which are cited below, hold that in order to have a joint enterprise there must be a community of interest in the object and purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each must have some voice and right to be heard in its control or management. *Barry* v. *Harding*, 244 Mass., 588; *Landry* v. *Hubert*, 100 Vt., 268, 274, 137 Atl., 97; *Crescent Motor Company et al* v. *Stone* (Ala.), 101 So., 49; *St. Louis & S. F. R. Co.* v. *Bell* (Okl.), 159 Pac., 336; *Myers* v. *Southern Pac. Company et als* (Cal.), 218 Pac., 284; *Schwartz* v. *Johnson* (Tenn.), 280 S. W., 32; *Northern Texas Traction Co.* v. *Woodall et al* (Tex. Civ. App.), 294 S. W., 873; *Cunningham* v. *City of Thief River Falls et al*, 84 Minn., 21, 86 N. W., 763; 20 R. C. L., Sec. 122, page 149.

Or, as stated in *Hines et al* v. *Welch* (Tex.), 229 S. W., 681, 683, "a joint enterprise, within the meaning of the law of imputed negligence, is, as given in 20 R. C. L., p. 149, s. 122, 'the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose.' "

The record in the case before us discloses no community of interest between the defendant and the plaintiff in relation to the automobile, and fails to show the essential element of right of control or management. For this reason, therefore, there is no occasion for this court to pass upon the question of imputed negligence. The entries in this case must be,

<div align="right">

*Motion overruled.*
*Exceptions overruled.*