MAINE SUPREME JUDICIAL COURT                                 Reporter of Decisions
Decision:      2014 ME 6
Docket:        Cum-13-165
Argued:        October 7, 2013
Decided:       January 16, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.


PRETI FLAHERTY BELIVEAU & PACHIOS LLP

v.

STATE TAX ASSESSOR


ALEXANDER, J.

[¶1]   Preti Flaherty Beliveau & Pachios LLP (Preti) appeals from the judgment of the Superior Court (Cumberland County, *Warren, J.*) affirming Maine Revenue Services' denial of Preti's Freedom of Access Act request, pursuant to 1 M.R.S. §§ 402(3) and 408-A (2013), for documents containing methodologies, formulas, or calculations relating to apportionment of Maine income tax liability for nonresident partners of a professional services partnership entity based in or with a significant business presence in Maine.   Maine Revenue Services had denied Preti's request, citing the privacy protections in 36 M.R.S. § 191(1) (2013), which excepts certain tax information and records from the definition of public records pursuant to 1 M.R.S. § 402(3)(A).

[¶2]   On appeal, Preti argues that the court erred in its interpretation of 36 M.R.S. § 191(1) and that any confidential information can be redacted from the

documents it seeks. Because the documents that are covered by Preti's request for information consist entirely of information deemed confidential pursuant to 36 M.R.S. § 191(1), we affirm.

## I. CASE HISTORY

[¶3] Preti is a Maine-based law firm, organized as a limited liability partnership. It was originally organized in Maine, and its largest presence is in Maine. However, Preti also has affiliated law offices in other states, including an office with resident partners in Concord, New Hampshire.

[¶4] The Maine income tax liability of Preti's New Hampshire partners was subject to previous litigation leading to our opinion in *Luker v. State Tax Assessor*, 2011 ME 52, 17 A.3d 1198. In *Luker*, the Preti partners in the New Hampshire office had each established separate professional corporations to receive partnership distributions from Preti. *Id.* ¶ 3. We held that "the partnership distributions should be attributed to the individual Attorneys for Maine income tax purposes," and "that each Attorney individually, and not his respective [professional corporation], earned the income from the partnership distributions in 2004 and 2005." *Id.* ¶ 16.

[¶5] Continuing its efforts to determine the proper Maine income tax treatment for distributions to its New Hampshire partners, Preti filed a Freedom of Access Act request pursuant to 1 M.R.S. §§ 401-521 (2013) with Maine Revenue

Services and the State Tax Assessor. That request sought access to State Tax Assessor records regarding the apportionment applied to other firms with nonresident partner income pursuant to 36 M.R.S. §§ 5192(5)[1] and § 5211(17)[2] (2013). Maine Revenue Services denied Preti's request to the extent that it sought taxpayer-specific information and also requested clarification. Preti responded by limiting the scope of its request and by filing an appeal of the partial denial with the Superior Court pursuant to 1 M.R.S. § 409(1) (2013). While Preti's appeal to the Superior Court was pending, Preti further limited its document access request.

[¶6] Ultimately, Preti's request, as modified, sought all allocation and apportionment formulas, methodologies, or calculations applicable to the determination of Maine income tax for nonresident partners in a partnership pursuant to 36 M.R.S. §§ 5192(5) and 5211(17). Preti expressly did not seek (1) records over ten years old; (2) records involving entities other than

---

[1] Title 36 M.R.S. § 5192(5) (2013) provides:

**Alternate methods.** The assessor may, on application, authorize or may require the use of such other methods of determining a nonresident partner's portion of partnership items derived from or connected with sources in this State, and the modifications related thereto, as may be appropriate and equitable, on such terms and conditions as he may require.

[2] Title 36 M.R.S. § 5211(17) (2013) provides:

**Variations.** If the apportionment provisions of this section do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition for, or the tax assessor may require, in respect to all or any part of the taxpayer's business activity, if reasonable: . . .
 **D.** The employment of any other method to effectuate an equitable apportionment of the taxpayer's income.

partnerships; (3) any emails, correspondence, or other records unless they expressly set forth actual apportionment formulas, methodologies, and/or calculations used to apportion or otherwise determine Maine income taxes owed by nonresident partners in a Maine partnership; or (4) the identity of any taxpayer or the details of taxpayer-specific financial information.

[¶7] In October 2012, Maine Revenue Services completed its search in response to Preti's request and produced two documents that contained no taxpayer-specific information of any kind. Maine Revenue Services also filed with the court for *in camera* review seven documents, which are the subject of this appeal.

[¶8] After conducting a de novo trial pursuant to 1 M.R.S. § 409 and after reviewing the documents *in camera*, the Superior Court determined that the documents it had reviewed were confidential pursuant to 1 M.R.S. § 402(3)(A) and 36 M.R.S. § 191(1), and thus not subject to redaction or disclosure. Preti timely appealed from that judgment.

## II. LEGAL ANALYSIS

[¶9] Preti argues that the privacy protection of section 191(1) is limited to information provided to Maine Revenue Services by the taxpayers and does not extend to Maine Revenue Services' own methodologies, formulas or decisions. It further contends that any information exempted from disclosure by section 191(1)

can be redacted to allow access to Maine Revenue Services' formulas and methodologies.

A.  Standard of Review and Rules of Statutory Construction

[¶10]  We review the statutory construction of the Freedom of Access Act (FOAA) de novo as a question of law.  *See Anastos v. Town of Brunswick*, 2011 ME 41, ¶ 5, 15 A.3d 1279.  Statutory exceptions to the FOAA are to be strictly construed to carry out the legislative mandate that the FOAA be "liberally construed and applied to promote its underlying purposes and policies."  1 M.R.S. § 401 (2013); *Cyr v. Madawaska Sch. Dep't*, 2007 ME 28, ¶ 8, 916 A.2d 967.  When an agency denies a FOAA request, the agency bears the burden of establishing that there is just and proper cause for the denial.  *Anastos*, 2011 ME 41, ¶ 5, 15 A.3d 1279; *Dow v. Caribou Chamber of Commerce & Indus.*, 2005 ME 113, ¶ 9, 884 A.2d 667.

[¶11]  When interpreting a statute, we accord its words their plain meaning and will look beyond those words only if the result of a plain meaning reading is illogical or absurd.  *Cyr,* 2007 ME 28, ¶ 9, 916 A.2d 967.  We will consider the whole statutory scheme for the section at issue in seeking to obtain a harmonious result. *Stromberg-Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566.  If the words of the statute are ambiguous, we will then look to the legislative

6

history to determine the intent of the legislature.  *Cyr*, 2007 ME 28, ¶ 9, 916 A.2d 967.

B.      Plain Meaning of Section 191(1)

[¶12]   The FOAA provides the public the right to inspect and copy any "public record."  1 M.R.S. § 408-A (2013).  A "public record" is defined as "any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained . . . that is in the possession or custody of an agency or public official of this State . . . except: (A) [r]ecords that have been designated confidential by statute. . . ."  1 M.R.S. § 402(3)(A).  Thus, all records in the possession of a state agency are public records subject to disclosure unless explicitly designated confidential by statute.

[¶13]   Title 36 M.R.S. § 191(1) designates certain tax information as confidential, excepting that information from the definition of public record contained in 1 M.R.S. § 402(3).  Section 191(1) provides, in pertinent part:

> [I]t is unlawful for any person who, pursuant to this Title, has been permitted to receive or view any portion of the original or a copy of any report, return or other information provided pursuant to this Title to divulge or make known in any manner any information set forth in any of those documents or obtained from examination or inspection under this Title of the premises or property of any taxpayer. This prohibition applies to both state tax information and federal tax information filed as part of a state tax return.

[¶14]  Preti argues that section 191(1) protects only information provided by taxpayers to Maine Revenue Services.  However, nowhere in the text of section

191(1) does the phrase "provided by the taxpayers" exist, nor can it be implied from a plain reading of section 191(1) that its privacy protections apply solely to tax returns, reports, or other information "provided pursuant to this Title" by the taxpayer. 36 M.R.S. § 191(1). Section 191(1) prohibits disclosure of any information appearing in "any report, return or other information provided pursuant to [Title 36]." Thus, even when strictly construed, the language of section 191(1) creates a broad sweep that protects all information, from whatever source, provided pursuant to Title 36, including information generated by Maine Revenue Services.

[¶15] Section 191(1) also prohibits the disclosure of "any information set forth in any of those documents or obtained from examination or inspection under this Title of the premises or property of any taxpayer." This language affirmatively indicates that any information Maine Revenue Services generates from review of taxpayer specific returns and information is protected.

C. Statutory Context

[¶16] This interpretation is confirmed by the statutory context in which section 191(1) appears. *See Stromberg-Carlson Corp.*, 2001 ME 11, ¶ 9, 765 A.2d 566 ("In determining plain meaning, we consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the

intent of the Legislature, may be achieved."). Section 191(2) contains many detailed exemptions from the section 191(1) privacy protections.

[¶17]   Preti's interpretation of section 191(1) would render multiple exemptions in section 191(2) unnecessary surplusage, contrary to our rules of construction.[3] *See Allied Resources, Inc. v. Dep't of Public Safety*, 2010 ME 64, ¶ 15, 999 A.2d 940 ("All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed."). For example, section 191(2)(H) authorizes Maine Revenue Services to disclose the reasons for revocation of a taxpayer's Title 36 registration. The reasons for revocation of a taxpayer's registration is information generated by Maine Revenue Services, not information submitted to Maine Revenue Services by the taxpayer. Under Preti's interpretation, this information would not be confidential and there would be no need for an exemption allowing for the release of this information.

[¶18]   At oral argument, there was some discussion regarding the applicability of 36 M.R.S. § 191(2)(UU) (2012). Because the Legislature amended section 191(2)(UU) differently in two Public Laws, the Maine Revised Statutes for 2012 contained two exemptions labeled UU. *See id.*  One exempted from protection the production of any reconsideration decision or other document setting

---

[3]  Title 36 M.R.S. § 191(2)(H), (L), (P), (Q), (Y), (EE), (JJ) (2012) all contain exemptions allowing for the release of information obtained, maintained, issued, and/or generated by Maine Revenue Services.

forth or discussing the assessor's practice, interpretation of law, or application of the law to particular facts in a redacted format, pursuant to a discovery or a FOAA request. P.L. 2011, ch. 644, § 5. The other UU exemption struck the language regarding the production of other documents, allowing only the production of reconsideration decisions and advisory rulings issued on or after July 1, 2012. P.L. 2011, ch. 694, § 8. Review of the legislative history of the UU exemption demonstrates that neither version is applicable in this case because ultimately they only exempt redacted reconsideration decisions and advisory rulings issued on or after July 1, 2012 from section 191(1) confidentiality, and none of the documents at issue in this case fall into those categories.

[¶19] Based on the plain language of section 191(1) and the statutory context in which section 191(1) appears, section 191(1) unambiguously mandates that all taxpayer-specific information received or generated by Maine Revenue Services pursuant to Title 36 is confidential, including federal tax return information, and is not subject to disclosure under the FOAA.

[¶20] Because all of the information contained in the documents at issue here is protected by section 191(1), Preti is not entitled to disclosure of the documents pursuant to the FOAA. *See Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 11 n.4, 754 A.2d 353 (noting that when a document

contains only protected information an agency need not disclose any portion of the document).

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Sigmund D. Schutz, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant Preti, Flaherty, Beliveau & Pachios, LLP

Scott W. Boak, Asst. Atty. Gen., Office of the Attorney General, for appellee State Tax Assessor

Cumberland County Superior Court docket number AP-2012-46
FOR CLERK REFERENCE ONLY